**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

KAIVA, LLC                                                                          PLAINTIFF

V.                                                                          NO. 1:15-CV-63-DMB

MICHAEL PARKER and
DEBRA PARKER                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This action is before the Court on various post-trial motions filed by the parties.

**I**
## Procedural History

On April 8, 2015, Kaiva, LLC filed a four-count complaint in this Court against Michael

and Debra Parker. Doc. #1. The complaint asserted claims for breach of contract, breach of the

duty of good faith and fair dealing, promissory estoppel, and unjust enrichment arising from an

agreement for Kaiva to purchase the Parkers' Subway sandwich franchise located in Okolona,

Mississippi.

Kaiva's claims for breach of contract and breach of the duty of good faith and fair dealing

were tried before a jury April 17–21, 2017.[1] *See* Docs. #79, #80. At the close of Kaiva's case in

chief, the Parkers orally moved for a directed verdict "on the basis that the plaintiffs have failed to

put in any evidence of Kaiva, LLC's losses." Doc. #92-1 at 4. The Court, construing the motion

as a Rule 50(a) motion for judgment as a matter of law, denied the requested relief.[2] The Parkers

then presented their case.

---

[1] Kaiva dropped its other claims by agreeing to the entry of a pretrial order which only included claims for breach of contract and breach of the covenant of good faith and fair dealing, and which provided that "[t]he pleadings are amended to conform to this pretrial order." Doc. #73 at 1.

[2] The advisory committee notes to Rule 50(a) state that "[i]f a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a

At the close of all evidence, Kaiva moved for a directed verdict on its claims. Doc. #99. The Parkers opposed the motion on multiple grounds, including on the issue of damages. Regarding damages, the Parkers' counsel stated, "I would incorporate my argument if that's allowed, from the other day, that we don't think that there has been sufficient evidence of damages presented. For that reason, we feel that a directed verdict at this time is inappropriate and that this matter should go to the jury." Doc. #99 at 5–6.

The Court denied Kaiva's motion and the case went to the jury. The jury found for Kaiva on both claims and awarded $250,000 in compensatory damages. Doc. #86. The jury also awarded a total of $15,000 in punitive damages—$7,500 against Michael and $7,500 against Debra. *Id.*

On May 1, 2017, Kaiva filed a motion seeking attorney's fees. Doc. #87. The Parkers responded in opposition on May 15, 2017, Doc. #89; and then one week later, filed a motion for judgment as a matter of law or for a new trial, Doc. #92. Kaiva replied in support of its motion on May 23, 2017, Doc. #94, and responded in opposition to the Parkers' motion on June 5, 2017, Doc. #101.

On June 9, 2017, the Parkers filed a motion to exceed the page limitation imposed by local rule for their reply in support of their motion for judgment as a matter of law. Doc. #103. Three days later, the Parkers filed their reply. Doc. #104.

**II**
**Parkers' Motion to Exceed Page Limit**

Rule 7(b)(5) of the Court's Local Civil Rules provides that a "[m]ovant's original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages …." "Page limitations are important, not merely to regulate the Court's workload, but also to encourage

---

motion for judgment as a matter of law in accordance with this rule." Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment.

litigants to hone their arguments and to eliminate excessive verbiage." *Fleming v. Cty. of Kane*, 855 F.2d 496, 497 (7th Cir. 1988) (citation omitted). Accordingly, leave to exceed a page limitation "should only be sought in exceptional circumstances." *Id.*

In their motion, the Parkers seek leave to exceed the page limitation by three pages because Kaiva's response to the motion for judgment as a matter of law:

> asserts issues to which Defendants could not have reasonably anticipated having to respond. Namely, Plaintiffs argue that Defendants waived the right to seek a JMOL citing old law that predates the 2006 Amendment to Rule 50 and Fifth Circuit case law interpreting same, and Plaintiffs added a new claim for lost profits to increase its damages beyond what it sought at trial.

Doc. #103.

Kaiva did not respond to the motion to exceed the page limitation; therefore, the motion may be granted on this ground alone. *See* L.U. Civ. R. 7(b)(3)(E) ("If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed."). Regardless, because the Parkers stated adequate grounds to exceed the page limitation by three pages, the motion is granted. The Parkers' reply brief, which, together with their original brief, exceeds the page limitation by three pages,[3] is deemed properly filed.

### III
### Relevant Standards

The Parkers' post-trial motion seeks judgment as a matter of law under Federal Rule of Civil Procedure 50 or, in the alternative, a new trial under Rule 59.

Pursuant to Federal Rule 50(a), a party may move for a judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Such a motion may be granted on a claim or defense "[i]f a party has been fully heard on an issue [necessary to the claim

---

[3] If the certificates of service are excluded, the total pages in the original and reply briefs exceed the page limit by only two pages.

or defense and] … a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue ….” Fed. R. Civ. P. 50(a)(1). In the event a Rule 50(a) motion is not granted, Rule 50(b) provides:

> No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). “In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.” *Id*.

“When a case is tried to a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury’s verdict.” *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (quotation marks omitted). To evaluate the sufficiency of the evidence, a court must “draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party.” *Id*. The reviewing court must “uphold the verdict unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.” *Id*. (quotation marks omitted).

Rule 59(a), unlike Rule 50, does not allow for a directed judgment. Rather, it provides that a “court may, on motion, grant a new trial on all or some of the issues--and to any party-- … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.” Fed. R. Civ. P. 59(a)(1)(A). “Motions for a new trial … must clearly establish either a manifest error of law or fact or must present newly discovered evidence.” *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016). In this regard, “[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.” *Seibert v. Jackson Cty.*, 851 F.3d 430, 439 (5th Cir. 2017).

Whether under Rule 59 or Rule 50, federal courts in diversity cases "apply federal standards of review to assess the sufficiency or insufficiency of the evidence in relation to the verdict, but in doing so … refer to state law for the kind of evidence that must be produced to support a verdict." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (quotation marks omitted).

## IV
## Relevant Trial Evidence

Around July 2010, Michael and Debbie Parker began negotiations with Jennifer and Ray Bentley to sell their Subway franchise to Kaiva, LLC, an entity owned by the Bentleys. During the negotiations, Michael prepared for Ray a profit and loss statement estimating that the Subway store would earn approximately $103,000 in profit for the 2010 fiscal year. Michael separately stated that the store earned a net profit of between 25% to 30% per year.

Sometime after these representations by Michael, the parties reached an agreement for the sale of the Parkers' Subway franchise to Kaiva. The basic terms of the agreement were that the Parkers would sell Kaiva their Subway franchise for a purchase price of $300,000, to be paid with a $15,000 down payment and then 120 monthly installments of $3,309.09 at an interest rate of 7%, for a total sum of $406,853. Additionally, Kaiva agreed to rent from the Parkers the building housing the Subway store for $800 per month.

The parties further agreed that the Parkers would transfer ownership of the Subway franchise to Kaiva after Kaiva paid half of the purchase price and that, following full payment, Kaiva would have ownership of "everything except the building." Doc. #92-7 at 61. According to the Bentleys, the parties chose to structure the deal in this way because the Bentleys could not obtain a loan to purchase the business. According to the Parkers, the deal was organized in this manner because the parties knew that, pursuant to the Parkers' franchise agreement, Subway had

to approve the transfer and also had a right of first refusal for any transfer of the franchise. The Bentleys, for their part, testified that they knew they had to be approved to ultimately take over the franchise but were never told that, pursuant to the franchise agreement, Subway had a right of first refusal or that the Parkers did not have the right to lease the premises, or that the agreement itself violated the franchise agreement and was thus voidable by Subway.

The Bentleys began operating the Subway store in September 2010. The Bentleys' tax returns for 2010 reflect that they valued the franchise itself at $150,000, and the store's equipment at $150,000.

By April of 2011, the Bentleys learned that the store was operating with an annual net profit of approximately $20,000, far below the $103,000 represented by Michael. Additionally, following a 2011 interaction with a Subway corporate representative, the Bentleys began to believe there was "something" about the deal with the Parkers that could result in Subway terminating the franchise. Notwithstanding these discoveries, the Bentleys elected to continue operating the franchise.

For approximately the next four years, the Bentleys operated the Subway under the terms of Kaiva's agreement with the Parkers, including paying all sums due to the Parkers. While operating the store, the Bentleys underwent monthly inspections by Scott Stevens, a Subway corporate representative. During these inspections, the Bentleys presented themselves as managers who were considering buying the store.

During one such inspection, Stevens noticed a business license on the wall of the Subway listing Kaiva as the store's operator. Stevens reported the license to his supervisor, Scott Sandifer, and sent a picture of the license to Sandifer at his request.

On December 6, 2013, Subway sent the Parkers a letter, addressed to the store, requesting

certain financial documents be provided on or before January 6, 2014.  The Parkers never received the letter and, as such, were unable to respond.  On January 23, 2014, Subway sent a second letter to the store notifying the Parkers that the franchise would be terminated if the documents requested were not provided within sixty days.  The Parkers did not receive this notice either.

At some point in mid-2014, the Parkers learned of Subway's requests for documents and requested an extension of the deadline to respond.  Michael asked Jennifer to prepare the documents and Jennifer responded in "about 5 minutes."  Michael then sent the documents to Subway.  Subway and the Parkers subsequently entered arbitration regarding the Parkers' alleged breach of the franchise agreement.

On October 23, 2014, while arbitration was ongoing, Subway sent the Parkers a "Termination of Franchise Agreement," which stated that "[i]t has come to our attention that Subway® 31000 has transferred, although an official transfer of the Franchise Agreement has not been completed."  Doc. #105-8 at 1.  The notice gave the Parkers sixty days to cure the default and warned that failure to do so would result in termination of the franchise agreement.

On January 30, 2015, the Parkers and Subway agreed to a "Stipulated Award" in the arbitration proceedings in which they admitted that they failed to adhere to the record review procedures of their franchise agreement and also agreed to sell the franchise within 120 days of the Stipulated Awards' execution.  The Stipulated Award further provided that "[i]f the Respondents fail to transfer the Restaurant by the date set forth above, the Franchise Agreement will be terminated on the one hundred twenty-first (121st) day from the execution of this award."  Doc. #105-10 at 4.  As a part of the arbitration process, Subway "reach[ed] in" to the store account controlled by the Bentleys and removed $5,000 in legal fees.

After agreeing to the arbitration award, Michael asked Ray whether he was interested in

purchasing the store. Ray was not.

On February 21, 2015, Michael agreed to sell the Subway to Doug and Wanda Sweeney for $100,000. The Sweeneys went through Subway's approval process and received approval to purchase the store. During the sale process, the Sweeneys retained the accounting firm of Watkins, Ward, and Stafford to evaluate the purchase price. On February 23, 2015, Wanda Ellis, a CPA with the firm, issued a letter stating that "it appears that the purchase price fairly reflects the value of the Franchise agreement and related items." This opinion of value was lower than the $123,190 value for the store reflected in Kaiva's 2015 tax return, which reported a $97,500 value for the franchise and a $25,690 value for the equipment.

Also on February 23, 2015, Michael, referencing Mississippi's requirements for terminating a month-to-month lease, sent the Bentleys an e-mail notifying them that their tenancy would be terminated in thirty days. At the time the lease was terminated, Kaiva was contractually obligated to pay the Parkers $181,428 in outstanding principal. Under the ten-year amortization agreement, this principal would have produced $30,443 in interest, for a total of $211,781. Following the eviction, Kaiva could not remove any of the store's equipment from the building; however, Kaiva did not ask for the equipment and did not request the value of the equipment.

Ultimately, the Parkers were unable to sell the franchise and Subway closed the store in June 2015.

## V
## Parkers' Motion for Judgment as a Matter of Law

The Parkers, claiming the evidence presented at trial did not support a damages verdict, seek a judgment as a matter of law on the issue of Kaiva's compensatory damages. Kaiva responds that the verdict was supported by sufficient evidence and that, even if it was not, the Parkers waived their ability to file a post-trial Rule 50(b) motion because they did not renew their Rule 50(a)

motion at the close of the evidence.

## A.  Waiver

 For years, the Fifth Circuit followed the "general rule [that] a party that fails to renew his motion for judgement as a matter of law at the conclusion of all evidence waives its right to challenge the sufficiency of evidence …."  *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 572 (5th Cir. 2002); *see Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997) ("Generally, a party who fails to renew his motion for directed verdict at the close of all the evidence waives his right to challenge the sufficiency of the evidence.").  Under this standard, a failure to raise a Rule 50(a) motion at the close of all the evidence resulted in a waiver of the evidentiary issue sought to be addressed unless the moving party satisfied Rule 50's purposes of enabling "the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury."  *Bay Colony*, 121 F.3d at 1003.  In 2006, however, Rule 50(b), the rule authorizing a post-trial motion for judgment as a matter of law, was "amended to permit renewal of any Rule 50(a) motion[,] … deleting the requirement that a motion be made at the close of all evidence."  Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment.

Following the 2006 amendment, the Fifth Circuit (relying on pre-2006 case law) continued to insist that, to preserve an issue, a "moving party must file … a pre-verdict Rule 50(a) motion at the close of all the evidence …."  *Consolidated Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 425 n.4 (5th Cir. 2010) (quoting *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1315 (5th Cir. 1995)).  Indeed, as recently as July 2017, the Fifth Circuit seemed to endorse the pre-2006 rule when it, in finding a Rule 50(b) issue waived, wrote that "[t]o preserve a challenge to the sufficiency of the

evidence, a party must move for judgment as a matter of law under Rule 50(a) on the basis of

insufficient evidence *at the conclusion of all of the evidence*." *NewCSI, Inc. v. Staffing 360 Sols.,*

*Inc.*, 865 F.3d 251, 257 n.4 (5th Cir. 2017) (emphasis added) (quoting *United States ex rel. Wallace*

*v. Flintco Inc.*, 145 F.3d 955, 960 (5th Cir. 1998)).   However, the Fifth Circuit has also held that

so long as a litigant moved for judgment as a matter of law before a verdict, she may renew that

motion in a post-judgment Rule 50(b) motion. *See Dulin v. Bd. of Comm'rs of Greenwood Leflore*

*Hosp.*, 586 F. App'x 643, 647 n.1 (5th Cir. 2014); *Prewitt v. Miss. State Univ.*, 537 F. App'x 322,

325 (5th Cir. 2013).

Fortunately, this Court need not resolve this apparent conflict because under either test, the

Parkers did not waive their right to seek a Rule 50(b) motion on the issue of damages.  If, as stated

in *Dulin*, any Rule 50(a) motion may be renewed under Rule 50(b), the Parkers did not waive their

right to seek Rule 50(b) relief on the issue of damages because they moved for a directed verdict

pursuant to Rule 50(a) on the same issue at the close of Kaiva's case in chief.

Furthermore, even if the pre-2006 standard remains in effect, the Parkers preserved the

issue despite their technical noncompliance by making their initial Rule 50(a) motion on the basis

of insufficient evidence of damages and then arguing the same point in response to Kaiva's motion

for directed verdict.  The timing of these arguments served the purposes of Rule 50 by enabling

this Court to address the issue of damages and by notifying Kaiva of the Parkers' position that

Kaiva had introduced insufficient evidence of damages.[4]  *See Bay Colony*, 121 F.3d at 1004

("Based on Trendmaker's motion for directed verdict at the close of Bay Colony's case-in-chief

---

[4] The statement of the Parkers' counsel at the close of evidence "that a directed verdict at this time is inappropriate and that this matter should go to the jury" does not change this conclusion.  Doc. #99 at 5–6.  Such statement was preceded immediately by both the assertion that Kaiva presented insufficient evidence of damages and the incorporation of Kaiva's previous assertions on the same point.  There can be no doubt the Parkers were advancing the argument that Kaiva presented insufficient evidence on the issue of damages.

and Trendmaker's objections to the proposed jury charge, we are convinced that the purposes of Rule 50(b) have been satisfied."). Thus, the Parkers' Rule 50(b) motion on the sufficiency of the damages evidence was properly asserted.

### B. Sufficiency of Evidence

Under Mississippi law, "it is well-understood that in an action seeking damages, the plaintiff bears the burden of proof as to the amount of damages." *Jackson HMA, LLC v. Morales*, 130 So.3d 493, 499 (Miss. 2013) (alteration omitted). Generally, expectancy damages represent the proper measure of recovery for claims for breach of contract or breach of the covenant of good faith and fair dealing. *See Cenac v. Murry*, 609 So.2d 1257, 1273 (Miss. 1992) (good faith and fair dealing damages); *Frierson v. Delta Outdoor, Inc.*, 794 So.2d 220, 225 (Miss. 2001) (breach of contract damages). In measuring such damages:

> the court's purpose … is to put the injured party in the position where she would have been but for the breach. Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.

*Frierson*, 794 So.2d at 225.

In their motion, the Parkers argue that Kaiva "was required to prove the fair market value of the lost assets at the time of the loss in February 2015 … [y]et, … completely failed to do so." Doc. #93 at 13 (emphasis omitted). Kaiva's response cites a litany of evidence but focuses on two facts:

> (1) it had been established that Mr. Parker overstated the profitability of the Subway by $80,000 per year, which amounted to more than $350,000 over the 53 months Plaintiff operated the Subway; and (2) it had been conceded in the Pretrial Order and by Mrs. Parker that the restaurant's value was $300,000 at all pertinent times.

Doc. #102 at 13. Kaiva argues that "[t]hese amounts were what the Plaintiff reasonably expected to obtain as the benefit of its bargain, and constitute the foundation of Plaintiff's expectation

damages." *Id.* Based on these arguments and the evidence cited in its response brief, Kaiva's claimed damages fall into four categories of damages caused by different breaches: (1) the damages caused by the Parkers' alleged misrepresentations regarding the profitability of the Subway store; (2) the damages caused by the Parkers' alleged failure to disclose the nature of the Subway franchise agreement; (3) the legal fees of $5,000 charged and collected by Subway for the arbitration process; and (4) the damages caused by the Parkers' actions during arbitration and the ultimate eviction of Kaiva which resulted in loss of the store.

It is axiomatic that a plaintiff is entitled to recover separately for each breach of contract. *See, e.g.*, *Flournoy v. Brown*, 26 So.2d 351, 356 (Miss. 1946) (noting plaintiff may make specific money demand for each breach of contract). Accordingly, the Court will consider whether any of the damages claimed are supported by any of the claimed breaches of contract.

### 1. Overstating Profits

Kaiva argues that, due to Michael's misleading statements regarding the store's expected profits, it suffered lost profits, including out of pocket expenses, "due to lower than represented profitability." The Parkers argue in response that Kaiva never asserted a claim for lost profits and that, even if it had, the lost profits and expenses are not a proper measure of damages for misstatements regarding profitability. The Court agrees with the Parkers' arguments.

A damages verdict cannot be sustained based on a theory never argued or presented to the jury. *Vojdani v. Pharmsan Labs, Inc.*, 741 F.3d 777, 787 (7th Cir. 2013). There is no dispute that Kaiva did not present a lost profits theory to the jury. Accordingly, such theory may not be used to sustain the verdict. Even if lost profits were properly argued, they would not be available here.

In the context of sales of property, Mississippi courts have held that "[i]n cases where during the negotiations there has been a material misrepresentation of a collateral characteristic of

the property, such as misrepresentation concerning past rents or income from property, the proper measure of damages is the difference between the actual value of the property and the contract price." *Garris v. Smith's G & G, LLC*, 941 So.2d 228, 233 (Miss. Ct. App. 2006) (citing *Hunt v. Sherrill*, 15 So.2d 426, 430 (Miss. 1943)).  Other courts have applied a similar rule to the sales of businesses.  *See, e.g.*, *Meda AB v. 3M Co.*, 969 F.Supp.2d 360, 387 (S.D.N.Y. 2013) (in cases of misrepresentation, "[d]amages for breach of contract are measured by the difference between the value of the business as warranted and its true value at the time of the transaction, plus interest").[5]  However, because contract law does not allow for windfall damages,[6] this measure of damages necessarily presupposes complete payment of the purchase price.  *See Laurel Auto Supply Co. v. Sumrall*, 185 So. 566, 567 (Miss. 1939) ("*Had he paid the full contract price* in cash at the time of the void sale, there could be no debate as to the measure of damages to be applied in this case ....") (emphasis added).  Accordingly, where, as here, the plaintiff did not pay the full purchase price, any damages must be offset by the amount remaining under the contract.  *See id*.  Thus, the Court concludes that the proper measure of damages for the failure to disclose the true profits of the Subway store is the difference between the value of the store at the time of the transfer and the contract price, offset by the amount remaining under the contract.

Under Mississippi law, the true value of a business is "that price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable

---

[5] *See also U.S.B. Acquisition Co. v. Stamm*, 660 So.2d 1075, 1079 (Fla. Dist. Ct. App. 1995) ("[T]he essence of the buyer's complaint was that certain of the express warranties and representations contained in the agreement were not true. The proper measure of damages for such misrepresentation is the difference between the value of the business as it would have been had it been as represented and warranted and the actual value of the business, determined as of the date of the sale or, in the alternative, the difference in value between the purchase price and the actual value at the time of sale.").

[6] *Houston v. Willis*, 24 So.3d 412, 422 (Miss. Ct. App. 2009).

knowledge of the relevant facts." *Singley v. Singley*, 846 So.2d 1004, 1011 (Miss. 2002).  While

valuation methods often consider the income of a business, profits and loss are not the only relevant

considerations.  *See Dunn v. Comm'r of Internal Revenue*, 301 F.3d 339, 350 (5th Cir. 2002) ("As

a broad generality, appraising corporations … involves consideration of three approaches: income,

market, and assets-based.").

Here, there is no dispute that the contract price for the sale of the store was $300,000.[7]

However, neither party introduced evidence or argument as to the true market value of the store,

that is, the actual value of the store at the time of sale.  In the absence of such evidence, the Court

cannot find sufficient evidence to support a claim for damages based on the failure to disclose the

actual profits of the store.[8]

### 2.  Arbitration Fee and Failure to Disclose Subway Franchise Agreement

To the extent Kaiva seeks damages based on the Parkers' failure to disclose that under their

franchise agreement with Subway, they lacked the right to sell the store or lease the store, the

Court, in the absence of law directly on point, draws guidance from case law concerning a failure

to convey marketable title.  In such a situation, the measure of damages, where the full purchase

price has been paid and the buyer has lost possession, is the value of the interest lost which the

vendor did not have a right to convey.  *See Palazzo v. Atha*, 242 So.2d 417, 419 (Miss. 1970) ("The

---

[7] The amortization agreement for the $300,000 included more than a hundred thousand dollars in interest payments. However, in the absence of a provision prohibiting early payment, finance charges in a seller-financed sales agreement "obviously … cannot be considered in fixing the cash contract price" of property.  *Union Motor Co. v. Turbiville*, 264 S.W.2d 592, 594–95 (Ark. 1954).  Additionally, to the extent the rental payments were not included in the amortization schedule and were otherwise unrelated to the purchase of the store, the Court declines to consider them a part of the contract price.  A ten-year lease agreement is invalid under the statute of frauds, and it would not have been separately enforceable against Kaiva.  *See* Miss. Code Ann. § 15-3-1(c) (leases for term longer than one year must be in writing).

[8] Mississippi courts have suggested, for the purpose of equitably distributing assets in a divorce, that a fact-finder's valuation based on profit/loss statements alone may, under certain circumstances, be sufficient to establish a value of a business.  *See Lacoste v. Lacoste*, 197 So.3d 897, 910 (Miss. Ct. App. 2016).  However, it appears no case outside the divorce context has suggested this is proper.  More important, Kaiva never raised such an argument to the jury or this Court.

measure of damages for a partial failure under a covenant of warranty of title to real property is the difference between value of the tract as warranted and the value of the tract without the lost portion."). Additionally, a plaintiff may recover expenses for defending their title, so long as such expenses do not push the total recovery beyond the purchase price paid. *Howard v. Clanton*, 481 So.2d 272, 276–77 (Miss. 1985). However, where the full purchase price has not been paid, it stands to reason that any recovery must be offset by the purchase price remaining on the contract.

The purchase agreement between Kaiva and the Parkers involved a $300,000 sale of the Subway franchise and equipment. There is no dispute that the Parkers had the ability to transfer the latter but not the former. There is also no dispute that Kaiva did not pay the full contract price for the transfer. Accordingly, the proper damages calculation for the failure to disclose the inability to transfer the franchise itself would be the difference between the value of the agreement as warranted, and the value of the property the Parkers had the right to convey (the equipment), plus the $5,000 spent in defending the title in arbitration, less the $181,428 amount remaining on the contract's principal.

Kaiva introduced no evidence specifically addressing the value of the store and equipment as warranted. However, relevant tax returns from 2010 show that Kaiva valued the franchise itself at $150,000 and the equipment at $150,000. Assuming without deciding that this evidence is sufficient to establish the value of the store and equipment as warranted, it would not support an award of damages because the amount remaining on the contract ($181,428) exceeds the allowable damages ($150,000 for the interest in the store not conveyed, and $5,000 for the legal fees charged for arbitration).

### 3. Loss of Store

Kaiva also seeks damages for the breaches (including the eviction) which ultimately caused

the February 2015 eviction and subsequent loss of the store. While no Mississippi court appears to have directly addressed the proper measure of damages for a lease purchase agreement—the type of agreement at issue here—the Mississippi Supreme Court has noted that, in a breach of lease action, a proper measure of damages is "the difference between the fair market value of the lease less the amount [the plaintiff] would have had to pay as rental under the terms of the lease." *Johnston v. Stinson*, 434 So.2d 715, 719–20 (Miss. 1983). The Mississippi Supreme Court has also held that the failure to convey property results in damages "measured by the value of the land at the time it should have been conveyed, less the contract price as yet unpaid." *Tansil v. Horlock*, 204 So.2d 457, 461 (Miss. 1967). Combining these two rules, it stands to reason that the Mississippi Supreme Court would hold that the remedy for the breach of a lease purchase agreement is the difference between the fair market value of the property to be purchased, less the contract price unpaid. *See generally Mimick Motor Co. v. Moore*, 546 S.E.2d 533, 536 (Ga. Ct. App. 2001) (in installment contract case, "the measure of [purchaser's] actual damages would be his equity in the [property], that is, the difference between the market value of the vehicle upon its repossession less the balance due on the purchase price").

Here, there can be no dispute that the amount remaining on the purchase price under the contract was approximately $181,000. Accordingly, damages would only be appropriate to the extent the actual value of the store at the time of the breach in February 2015 exceeded this amount. The Parkers, citing the opinion of the Sweeneys' accountant that $100,000 represented a fair value for the purchase of the Subway, argue that the value of the store in February 2015 was approximately $100,000. Kaiva responds that "it had been conceded in the Pretrial Order and by Mrs. Parker that the restaurant's value was $300,000 at all pertinent times." Doc. #102 at 13.

As an initial matter, the Court has reviewed the cited testimony regarding Debbie's position

and has found no evidentiary support for the statement that the store was valued at $300,000 at the time of loss. Accordingly, the Court must consider whether this fact was admitted by the Parkers.

In arguing that the Parkers conceded the value of the franchise, Kaiva cites the Parkers' "concise summar[y] of the ultimate facts" included in the pretrial order, which states: "The Bentleys intentionally concealed from the Parkers compliance and audit notices from Subway Corporate that … resulted in the Parkers losing the Franchise. The Parkers lost a franchise worth $300,000." Doc. #73 at 4.

"A judicial admission is a formal concession … by a party or counsel that is binding on the party making them. It has the effect of withdrawing a fact from contention." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 422 n.4 (5th Cir. 2017) (alterations omitted). "Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). However,

> [t]o qualify as a judicial admission, [a] statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based.

*Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001).

The Parkers argue that the statement in the pretrial order "was not specific to 2015 and, therefore, was not clear enough to be considered a judicial admission as to the value of the[] asset[] in 2015." Doc. #104 at 3. Thus, they seem to attack only the requirement that the admission be "deliberate, clear, and unequivocal."

In evaluating whether a statement meets the clarity requirement, the Court must consider the "context" of the assertion. *See Brazoria Cty. Stewart Food Mkts. v. Comm'r of Internal*

*Revenue*, 48 F. App'x 917, 2002 WL 31115069, at *8 (5th Cir. 2002) ("In context, it appears that Grimslinger was agreeing with Cummings's statement that 'I don't think we now have a disagreement about the figures.'") (emphasis omitted); *see also Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F.Supp.2d 913, 935 (S.D. Ind. 2000) ("Moreover, it becomes obvious that when the 'admission' is read in the context of the brief in which it appears and in light of Heritage's Reply, the coverage issue was still quite in controversy."). Additionally, where, as here, "the fact that it occurred to no one at trial that [an] isolated remark constituted a binding admission undercuts the notion that the statement was sufficiently deliberate and clear so as to have preclusive effect." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 348 (4th Cir. 2014).

The Court agrees with the Parkers that the alleged admission lacks sufficient clarity to constitute an admission that the store was worth $300,000 *at the time of its loss*. The statement does not include a date for the alleged valuation. Even under the interpretation most charitable to Kaiva, the time of loss referenced would have been June 2015 (when the Parkers lost the store), not February 2015, at the time of breach. This ambiguity, combined with the fact that Kaiva did not argue the judicial admission point at trial, convinces the Court that the statement lacks the requisite clarity to be deemed a judicial admission. Accordingly, the statement cannot support a finding that the value of the franchise at the time of breach was $300,000. Therefore, the only relevant evidence of valuation supports the conclusion that at the time of breach, the franchise was worth approximately $100,000. Because this sum is approximately $80,000 less than the amount remaining on the contract, Kaiva is not entitled to compensatory damages for those breaches related to the February 2015 loss of the store.

## C. Relief

In sum, none of the evidence cited by Kaiva supports a jury verdict of compensatory

damages.  Accordingly, a judgment as a matter of law would be appropriate.  However, "the court has discretion to order a new trial rather judgment as a matter of law when the defect in the nonmoving party's proof might be remedied at a second trial."  *Stevenson v. E.I. Dupont De Nemours & Co.*, 327 F.3d 400, 409 (5th Cir. 2003) (alteration omitted); 9B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2538 (3d ed. 2017).  In exercising this discretion in a diversity case, the court should consider whether forum state courts have issued judgments or orders for a new trial under similar circumstances.  *See, e.g.*, *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 780 (5th Cir. 2017) (citing Texas state court opinions and holding district court should have entered judgment instead of ordering new trial on damages).

As argued in the Parkers' brief, Mississippi appellate courts have generally affirmed directed verdicts where a plaintiff introduced insufficient evidence of value to support the claimed damages.  *See Thomas v. Glob. Boat Builders & Repairmen, Inc.*, 482 So.2d 1112, 1117 (Miss. 1986).  However, where a plaintiff has failed to introduce evidence of value sufficient to support a jury award, Mississippi appellate courts have ordered a new trial, rather than remanding for entry of judgment.  *See Harper v. Hudson*, 418 So.2d 54, 57–58 (Miss. 1982) (new trial on all issues where insufficient evidence of value introduced and "the evidence of liability [was] close"); *Ballard Realty Co., Inc. v. Ohazurike*, 97 So.3d 52, 66–67 (Miss. 2012) (new trial based on insufficient evidence of lost profits).  Here, Kaiva introduced insufficient proof of the value of the store at the time of purchase and loss.  However, Kaiva could establish a right to damages by introducing evidence on these points.  Accordingly, the Court, in the exercise of its discretion, will grant a new trial on the issue of compensatory damages.

## VI
## Parkers' Motion for New Trial

As an alternative to judgment as a matter of law, the Parkers seek a new trial on four issues:

(1) compensatory damages; (2) whether they breached the contract; (3) whether Kaiva waived its claims for breach of contract; and (4) the propriety of punitive damages.

## A.  Damages

For the reasons articulated above, the Court concludes a new trial is required on the issue of compensatory damages.

## B.  Breach of Contract

The Parkers argue a new trial is justified because "[t]here could be no finding of breach of contract … for the following reason: the parties agreed that neither party would be liable to the other for any losses caused by Subway corporate's termination of the franchise."  Doc. #93 at 20–21.  As support for this proposition, the Parkers point to trial testimony from Ray that it was an unspoken agreement that if Subway terminated the franchise for cause, both parties would lose their investments and neither party could sue for the lost equity.  *Id*. at 21–22.  Kaiva responds that, in the same trial exchange, Ray testified expressly that it was an unspoken agreement that if a party caused Subway to terminate the franchise, then a lawsuit would be proper.  Doc. #102 at 15–16.

In evaluating the Parkers' argument, the Court begins by noting that the testimony identified does not excuse the Parkers from any duties under the contract and, therefore, does not preclude a finding of breach of contract.  At most, the testimony establishes the existence of a covenant not to sue in the event Subway terminated the franchise for cause unrelated to either party.  "A covenant … not to sue … amount[s] to a release."  *Stebbins v. Niles*, 25 Miss. 267, 356 (Miss. 1852).  Under Mississippi law, the existence of a release is an affirmative defense which is waived if not pled.  *See Hutzel v. City of Jackson*, 33 So.3d 1116, 1119 (Miss. 2010).  The Parkers did not plead or argue release at trial.  Accordingly, they may not assert such an argument now.

Even if such a release were enforceable, it would not bar suit here to the extent Kaiva alleged that the Parkers caused the termination of the franchise agreement.

## C. Waiver

The Parkers also seek a new trial because "the great weight of the evidence proved that [Kaiva] waived its claims of breach" and because counsel for Kaiva gave an improper closing argument on the waiver issue. Doc. #93 at 23.

### 1. Evidence of Waiver

The Parkers contend that Kaiva based its breach claims on three allegedly wrongful actions by them—the failure to provide accurate information, the failure to disclose the agreement's violation of Subway's rules, and the eviction of Kaiva—and that by continuing to operate the store, Kaiva waived the right to bring claims based on any of these actions. *Id.* at 23–24. Kaiva responds that the evidence did not support a waiver and that, even if it did, Kaiva asserted claims for additional breaches not discussed in the Parkers' motion for a new trial.[9] Doc. #102 at 17–18.

Broadly, "[w]aiver is [a] voluntary surrender or relinquishment of some known right." *Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cty.*, 212 So.3d 742, 750 n.9 (Miss. 2016). Of relevance here, "the breach of a contract by one party thereto can be waived by the other." *Moore v. Yazoo & M. V. R. Co.*, 166 So. 395, 397 (Miss. 1936). When a party claims waiver of a contractual right:

> the Court should look to the actions of the relevant party after that party has sufficient information to be on notice of the alleged deviation from the contractual duty. If, after acquiring knowledge of the deviation from a known right articulated

---

[9] Finally, Kaiva, citing *Rushing v. Trustmark National Bank*, 66 So.3d 729 (Miss. Ct. App. 2011), argues that a violation of the duty of good faith and fair dealing cannot be waived. Doc. #102 at 17–18. In *Rushing*, Mississippi Court of Appeals Judge Virginia Carter Carlton wrote in dissent, "The obligation of good faith imposed by law into every contract is not subject to waiver." 66 So.3d at 734 (Carlton, J., dissenting). This statement, which as a dissenting opinion is not precedent, relied on a provision of Mississippi's Uniform Commercial Code, which has not been mentioned by the parties here.

in the contract, a party fails to insist on its contractual rights, or acts inconsistently with such rights, then that party waives the right to require such performance.

*Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So.2d 1100, 1112 (Miss. 2007) (citations omitted). "[W]aiver of a contractual provision must be clearly established and will not be inferred from equivocal acts or language." 13 WILLISTON ON CONTRACTS § 39:14 n.7 and accompanying text (4th ed. 2017) (collecting cases).

Generally, when a party breaches a contract for a sale of a business by engaging in fraud or misrepresentation, the non-breaching party waives "their option to rescind the contract by managing and operating the corporation after discovery of the … alleged fraud." *Gardner v. Little*, 755 So.2d 1273, 1276 (Miss. Ct. App. 2000). However, continued operation alone does not waive the right to pursue a claim for damages. Rather, if a defendant "misrepresented the corporation's net worth or acted in bad faith, then [the plaintiff is] required to either promptly rescind the contract or affirm the contract and maintain an action in damages." *Id*.

After learning of the Parkers' alleged misrepresentations, Kaiva, as was its right, elected to affirm the contract and maintain an action in damages. *See Maverick Benefit Advisors, LLC v. Bostrom*, 382 P.3d 753, 761 & n.6 (Wyo. 2016) (purchaser of company did not waive right to seek damages when it operated company for 18-month period while learning of numerous inaccuracies in information provided by seller-defendant). Thus, Kaiva's continued operation of the business, standing alone, did not amount to a waiver of its right to seek damages for the Parkers' misrepresentations.

As for the alleged breach based on eviction, the Parkers argue that by 2011, the Bentleys were aware of a risk of eviction if Subway learned of the deal but nevertheless continued to operate

the store.[10]  However, the Parkers offer no argument or authority as to how knowledge of the risk of eviction amounted to knowledge of a deviation of a known right – a necessary prerequisite to a contractual waiver.  Furthermore, the Parkers have failed to show that continued operation of the store amounted to an intentional relinquishment of the right to seek recovery in the case of an *actual* wrongful eviction caused by the Parkers.  In the absence of such argument (or evidence), the Court finds insufficient evidence of waiver.

In sum, the Parkers have failed to show that the great weight of the evidence established waiver of any of the three rights identified.  A new trial is unwarranted on such grounds.  Having reached this conclusion, the Court declines to address Kaiva's additional argument that it asserted other grounds for breach not mentioned in the Parkers' motion for a new trial.

### 2.  Closing Argument

"A motion for new trial premised on improper arguments by counsel should only be granted when improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions."  *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012).

The Parkers argue that a new trial is required because during closing arguments Kaiva's counsel, when discussing the requirement that waiver requires an articulated right, stated that "articulated means spelled out, written down, expressly understood."  Kaiva responds that the Parkers cannot seek a new trial on this point because they did not move for a mistrial and that, even if they could seek a new trial on such ground, the instruction was proper.  Kaiva further contends that even if the instruction was improper, a new trial is unwarranted because the Parkers cannot establish prejudice or a failure to follow instructions.

---

[10] The Parkers also argue the eviction did not cause damages because Kaiva would have been evicted anyway and because, as discussed above, termination of the agreement saved Kaiva money.  These arguments relate to damages, not to waiver.

As grounds for the waiver argument, Kaiva relies on *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989), in which the Fifth Circuit held that a litigant could not seek a new trial based on improper closing arguments when its counsel "did not move for a mistrial because of any of the remarks complained of …." *Colburn* is distinguishable from this case. In *Colburn*, counsel either failed to object to the challenged closing arguments or, after having an objection sustained, failed to move for a mistrial. *See id.* *Colburn* did not involve the situation at issue here where an objection was made at the time of the allegedly improper closing and the objection was overruled. Under such circumstances, the objection is preserved. *See United States v. Lamerson*, 457 F.2d 371, 371–72 (5th Cir. 1972).[11]

Next, Kaiva, citing a number of non-waiver cases in which courts looked at written sources to determine whether a right is "articulated," contends that the closing argument accurately stated the law. To the extent Kaiva argues a term must be written to be waived, such is simply incorrect. *See Saucier v. Coldwell Banker JME Realty*, 644 F.Supp.2d 769, 783 (S.D. Miss. 2007) ("[W]hether or not Plaintiff effectively waived the terms of the alleged oral contract … depends upon factual determinations properly reserved for the jury."). Nevertheless, a new trial is not warranted.

As quoted above, Kaiva's counsel argued that "articulated means spelled out, written down, expressly understood." Doc. #100 at 44. As stated, the definition argued could either be disjunctive (which would be legally correct) or conjunctive (which would be legally incorrect). The ambiguity in this statement, combined with the fact that the Court gave an indisputably

---

[11] *See also United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-cv-433, 2014 WL 12769371, at *12 (S.D. Miss. Feb. 21, 2014) ("A party may waive any objection to the impropriety of an opposing party's closing argument by failing to object to opposing counsel's tactics either at the time of the argument or at a sidebar conference immediately thereafter, by failing to move for a mistrial before the case is submitted to the jury, *and* by waiting until after the jury has returned its verdict to urge the improper arguments as grounds for a new trial.") (emphasis added) (citing *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, Inc., 848 F.2d 613, 619 (5th Cir. 1988)).

accurate instruction which has not been shown to have been disregarded by the jury, compels the conclusion that the closing argument did not irreparably prejudice the jury. *See Mayall v. Peabody Coal Co.*, 7 F.3d 570, 573 (7th Cir. 1993) ("Any potential prejudice … was … lessened substantially by the fact that the jury was [properly] instructed …."); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Accordingly, a new trial will not be granted on the ground of an improper closing argument.

### D. Punitive Damages

The Parkers argue a new trial is needed on the issue of punitive damages because: (1) a new trial is needed on the issue of compensatory damages; (2) there was no evidence of a causal connection between the wrongful acts and the alleged harm; (3) there was no evidence to support the punitive damages award against Debbie; and (4) punitive damages cannot be awarded until the Court conducts a post-verdict assessment.

"Punitive damages do not exist in a vacuum. Absent a valid claim for compensatory damages, there can be no claim for punitive damages." *Union Carbide Corp. v. Nix, Jr.*, 142 So.3d 374, 392 (Miss. 2014). Accordingly, because a new trial will be granted on compensatory damages, a new trial will be required on the issue of punitive damages.[12]

### VII
### Kaiva's Motion for Attorney's Fees

"Mississippi law is well-settled with respect to awarding attorney's fees. If attorney's fees are not authorized by the contract or by statute, they are not to be awarded when an award of punitive damages is not proper." *Miller v. Parker McCurley Props., L.L.C.*, 36 So.3d 1234, 1243–44 (Miss. 2010) (quotation marks omitted). Because a new trial is necessary on the issue of

---

[12] Given this, the Court need not reach the merits of the Parkers' three other arguments for a new trial on punitive damages.

punitive damages, Kaiva's motion for attorney's fees will be denied.

## VIII
### Conclusion

For the reasons above:

1.     The Parkers' motion for leave to file excess pages [103] is **GRANTED**.

2.     The Parkers' motion for judgment as a matter of law or, in the alternative, a new trial [92] is **GRANTED in Part and DENIED in Part**.  The motion is GRANTED to the extent it seeks a new trial on the issues of compensatory and punitive damages, and DENIED in all other respects.

3.     Kaiva's motion for attorney's fees [87] is **DENIED**.

**SO ORDERED**, this 5st day of March, 2018.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**